# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF INDIANA,

AT INDIANAPOLIS, MAY TERM, 1884, IN THE SIXTY-EIGHTH
YEAR OF THE STATE.

---

No. 11,302.

### BUCHANAN v. HUBBARD.

DEED. —*Infancy.* —*Married Woman.* —*Disaffirmance of Deed.* —*Estoppel.* —A married woman may, at any time during coverture, disaffirm a deed made by her while an infant, and she is not estopped by the facts, that when the deed was executed she appeared and was believed by the grantee to be an adult, that the grantee, with her knowledge after reaching majority, improved the land, and that he had conveyed to an innocent purchaser, and that after majority she, with her husband, enjoyed and exercised dominion over the consideration received.

From the Hendricks Circuit Court.

*C. Foley,* for appellant.
*L. M. Campbell,* for appellee.

ELLIOTT, C. J.—The complaint of the appellant is for the recovery of real estate, and the answer of the appellee is an affirmative one, setting forth, with much particularity, the facts constituting the defence. The material allegations of the answer may be thus summarized: On the 3d day of October, 1867, the appellant owned the land in controversy and on that day joined with her husband in a deed of convey-

ance to Levi Pennington for the consideration of $1,800, and this deed was duly recorded; on the day the deed was executed the appellant was twenty years, eleven months and twenty days of age. At the time the deed was executed she was married, and had been the wife of John Buchanan for more than four years, to whom she had borne two children. Her appearance indicated that she was of full age; and Pennington, from her appearance and the age of her children, believed that she had attained her majority. Part of the consideration for appellant's conveyance was paid by the execution of a deed to her husband for lands in Kansas, but the deed was made to him with her knowledge and consent. The land in controversy formed part of a farm owned by Chesley Page, the appellant's father, in his lifetime. She resided within a few rods of the land at the time the deed was executed and until she became of age, and a few days after arriving at full age she removed with her husband to Kansas, settled on the land acquired from Pennington, and the deed therefor was duly placed on record. After appellant attained her majority, Pennington, still having no notice of her infancy, paid to her husband for her use $400 of the purchase-money for the land conveyed to him. She and her husband continued to live on and near the Kansas land until August, 1873, during which time she united with her husband in leasing that land for a period of five years; in the month named she came back to the vicinity of the land in dispute and there remained for five years with full knowledge that her grantee was claiming, encumbering and improving the land as his own. After stating the facts we have summarized, the answer alleges the conveyance of the land to good-faith purchasers for value, and that they bought without knowledge of appellant's nonage at the time of the execution of the conveyance, and it alleges, also, that Pennington is insolvent, and further charges that appellant for more than fifteen years neglected to disaffirm her conveyance.

The reply admits that the appellant owned the land in her

own right, and states how she acquired title, admits the execution of the deed by herself and husband to Pennington, and that she was of the age of twenty years, eleven months and twenty days; it admits, also, the removal to and residence in Kansas, and the execution of conveyances to good-faith purchasers. It is averred that the appellant did not know of her right to disaffirm her conveyance until November, 1882, and that on the 7th day of the following month she did disaffirm, and did serve written notice of disaffirmance on the appellee. The reply denies the payment of $400 to her husband for her use after she became of age, denies, also, that she knew that Pennington was encumbering or conveying the land, and that the deed to the Kansas land was delivered to her. A demurrer was sustained to this reply, and on that ruling rests the assignment of error.

It appears from both answer and reply, that appellant was an infant *feme covert* at the time the deed was executed, and that the disability of coverture still exists. The deed of an infant is voidable, and when duly disaffirmed ceases to be effective, and as the appellant was an infant when the deed was executed, she had *prima facie* a right to disaffirm it, but in order that the disaffirmance of a deed executed by an infant should be effective, it should appear to have been made in due season.

The existence of the disability of coverture exerts an important influence upon the question of the due exercise of the right of a grantor to disaffirm a deed made while an infant. Whatever may be the influence of coverture upon other questions, there can be no doubt that it exerts an important and controlling one over the question of the reasonable exercise of the right to disaffirm. It is firmly settled that a married woman may at any time during coverture disaffirm a deed executed by her before she arrived at full age. *Richardson* v. *Pate*, 93 Ind. 423; *Applegate* v. *Conner*, 93 Ind. 185; *Sims* v. *Smith*, 86 Ind. 577; *Sims* v. *Snyder*, 86 Ind. 602; *Sims* v. *Bardoner*, 86 Ind. 87; S. C., 44 Am. R. 263, auth. n.; *Stringer*

v. *Northwestern, etc., Ins. Co.*, 82 Ind. 100; *Sims* v. *Everhardt*, 102 U. S. 300.

The question remaining for decision is whether the facts stated in the answer, and not denied by the reply, estop the appellant from avoiding her deed.

The fact that *bona fide* purchasers have acquired rights does not preclude a grantor from disaffirming a deed made before arriving at full age. The deed of an infant may be avoided whether the land is held by the original grantee or has passed into other hands. *Miles* v. *Lingerman*, 24 Ind. 385; *Sims* v. *Smith, supra.*

The reply denies that the consideration for the land was received by the appellant, and so we need not inquire what would have been the effect of the receipt of the consideration by her. It is quite clear that the fact that the appellant resided near the land, and had knowledge of the character of the conveyances, can not work an estoppel; nor can the fact that her grantee had made improvements estop her from asserting her infancy in avoidance of the deed. *Richardson* v. *Pate, supra; Wilhite* v. *Hamrick*, 92 Ind. 594. Whether the value of improvements made by the appellant's grantee might be recovered under a proper counter-claim or cross complaint, is not a question here, for no such claim is asserted.

The cases to which we have referred show very clearly that a *feme covert* can not be estopped from avoiding a deed made while an infant, on the ground that her husband received and retained the consideration paid by the purchaser. The fact, that she unites with her husband in enjoying or exercising dominion over the property received by the husband as part of the consideration, does not preclude her from asserting the disability of infancy against her grantee.

What took place before Mrs. Buchanan became of age can not estop her. The doctrine of estoppel is sparingly and guardedly applied to infants, and even if the appellant had expressly represented herself to be of age, the representation

would not have operated as an estoppel. *Carpenter* v. *Carpenter*, 45 Ind. 142; *Price* v. *Jennings*, 62 Ind. 111; *Conrad* v. *Lane*, 26 Minn. 389; S. C., 37 Am. R. 412.

It is assumed by the appellee's counsel, that although the deed was made on the 3d of October, the contract was not complete until the 15th of that month, when possession was delivered, and that, as Mrs. Buchanan was of age at that time, she can not now avoid the deed. We are strongly inclined to agree with counsel, that if the contract was not complete until the 15th of October, and was then consummated by the voluntary delivery of possession, the deed must be sustained. There is much reason for this conclusion. The deed is not voidable because the grantor was a *feme covert*, but because she was an infant, and if the contract was not completed until after the disability of infancy ceased, that disability can not avail. If the contract was not executed until after Mrs. Buchanan arrived at full age, and was then consummated, the fact that she was a *feme covert* will not impair its force. But, although we have been strongly pressed by the hardship of the case, and have endeavored to find some fact that would justify us in holding that the contract was not consummated until after the appellant became of age, we have been unable to do so. The language of the answer clearly imports that the contract was consummated on the 3d of October, and the averments of the reply expressly affirm that the deed was executed on that day.

The infirmity of the deed to Pennington, the appellee's remote grantor, grows out of the disability of infancy, and not of coverture, so that if the first disability did not exist the second can not overthrow appellee's title. To a limited extent it is therefore true, as counsel claims, that there is no question of the disability of coverture involved in this case, but counsel carries the proposition, that there is no question of double disability, much beyond its legitimate effect. Upon the question of the right to disaffirm and the time of disaffirmance, the disability of coverture assumes an important

and ruling position, and hence, there is necessarily involved both the disability of infancy and that of coverture.

We can not escape the conclusion that the trial court erred in sustaining appellee's demurrer to the appellant's reply, and we must, therefore, reverse the judgment.

Filed May 29, 1884.